The case of the day is United States v. Blocker. The search that Dropbox performed of Adam Blocker's account is fairly attributable to the government in this case. The record here includes two agreements between Dropbox and a government entity called the National Center for Missing and Exploited Children, which also goes by NCMEC. And the terms of those agreements were that NCMEC provided Dropbox with technology and with intellectual property, and in exchange, Dropbox agreed that it was going to search its servers for child pornography on the government's behalf and share the results of those searches. That, of course, begs the question. But I wonder why we are beginning with this line of argument rather than the ground on which the district court decided the case. Understood, Your Honor. I'll switch to the terms of service issue. So the district court decided that when Mr. Blocker agreed to this terms of service with Dropbox, he consented to a government-directed search of his account. No, that's not what the district judge held. So Mr. Judge held that he consented to a search. That's right, Your Honor. And you don't disagree with that so far as I can see. Your argument seems to be it should just be ignored because Blocker thought it wouldn't happen and therefore the actual terms of consent just go away. People who sign contracts often wish that, but it doesn't really happen. Your Honor, that's not our argument. Our argument is that the terms of service draw a distinction between Dropbox's right to access Mr. Blocker's files in its own private business capacity and Dropbox's right to access Mr. Blocker's files on behalf of the government when it's acting as a government instrument or agent. We have the law and order in the public interest section of the terms of use. And so with that line of argument, just to pull the thread a little bit, it says Dropbox tells the user, we may disclose your information to third parties if we determine that such disclosure is reasonably necessary. Yes, Your Honor. It's particular to comply with applicable law. And so is that not notice, I suppose, to the individual who signs up for the account? It's not because there's a difference between the search and the subsequent disclosure. And that's an issue the Second Circuit addresses in its Maher decision. Even though it says we may disclose. That's right, Your Honor, because our Fourth Amendment challenge isn't to Dropbox's disclosure. It's to Dropbox's prior search, which we are saying Dropbox performed in a capacity as a government instrument or agent. And so, you know, when you look to this terms of service language, it's materially identical to the language that appears in just about every digital terms of service agreement. Microsoft's agreement governing Outlook, Google's agreement governing Gmail. And so if this terms of service language that says we may review your conduct and content but have no obligation to do so, provides consent for a Fourth Amendment search, that means essentially that there is no Fourth Amendment right privacy. I just don't get it. Consent is valid no matter who does the search. If you consent to the government searching your files, that's a valid consent. If you consent to Dropbox searching your files, that's a valid consent. What's the, I don't see what the problem is. Well, Your Honor, the problem is that this is a distinction that certainly is drawn in Warshak and Maher, but I think the Warshak decision of the Sixth Circuit makes it clear that this is all- You really want us to ignore Adkinson, don't you? I don't, Your Honor. I want you to focus on the difference in the language between the terms of service in Adkinson and the terms of service at issue here. And so in Adkinson, the cell site data is T-Mobile's record. It's their business record. And they say we automatically collect this. It's something that we are going to review in the course of doing business. The Dropbox terms of service, by contrast, say this is your stuff. We have the limited rights of access to allow us to offer the services. They say we may review it, but we don't necessarily do so. And they say in their privacy- How is that different as a matter of consent? Well, so, Your Honor, what Warshak says, and they go back to Katz for this- I think we should stay at Adkinson. Okay. Your Honor, it matters because people have different expectations of privacy and have different- Yeah, that's where my client had an expectation that they wouldn't do it, and therefore they can't do it. Your brief is quite clear about that, but I don't see how that works. Your Honor, I think the distinction goes to, in Adkinson, T-Mobile collected this data, searched this data as a private- And certainly Adkinson had an expectation that that data would not be used by T-Mobile or the government. There's no doubt about that. You carry a cell phone around in your pocket. You don't think anybody is tracking your every movement. Indeed, you believe it isn't because, of course, it isn't, except in very rare cases. Well, Your Honor, the difference is T-Mobile automatically collected this data, and they automatically used it as a condition- And Dropbox automatically has all of the child porn that anybody uploads to it. It's just there, just the same way the cell site data is there with T-Mobile. And then what do you do with it? Your Honor, I suppose the thrust of our argument is that the Fourth Amendment makes a distinction between data that a third party holds as an intermediary and data that belongs to the third party. And in Katz, the telephone company had the exact same right of accessing and monitoring- I must say, I just don't get it. The Fourth Amendment doesn't have anything to do- well, it does. But if you consent to a search by the government or you consent to a search by a private party, you've consented. There isn't anything in the Fourth Amendment that says you can consent to a search by an the request of an FBI agent. If you've consented, you've consented. Well, Your Honor, the Supreme Court case law shows that there are many examples where we consent to allow a private party to have a right of access to a Fourth Amendment protected space. For instance, in a hotel room, a rented apartment. So Your Honor, I suppose first, we think that the plain language of the agreement shows that there is a distinction between Dropbox accessing this stuff in its own capacity and accessing it on behalf of the government, but we also think that conclusion is mandated by Supreme Court precedent. And for this court to reach a contrary conclusion on the language in this agreement, not only would show that there's essentially no Fourth Amendment right to privacy in any email account, it would also create a circuit split between the clear holdings of the Sixth Circuit and of the Second Circuit. To return to the... Would we agree that a defendant can voluntarily consent in advance to a search? Your Honor... As a condition of receiving services? Your Honor, I think it's possible, but I think it would take the kind of language... Okay, so stop there. I just wanted to know, can they do it? Yes. And so I want to make sure I'm following your argument, is that here, that consent was not given? Correct, Your Honor. And point us to the language that would demonstrate from the terms that would demonstrate that consent was not given.  So, Your Honor, I'd point primarily to three things. The first would be, and this is page 40 of the appendix, where Dropbox's terms of service say these terms don't give us any rights to your stuff except for the limited rights that enable us to offer the services. A little further down, it's still on page 40 of the appendix, we may review your conduct and content for compliance with these terms in our acceptable use policy. With that said, we have no obligation to do so. And then the third place I'd ask Your Honor to take a look at is in the privacy policy, which is incorporated into the terms of service on page 48 of the appendix. Did you say 48? 48, Your Honor. We believe that your data should receive the same legal protections regardless of whether it's stored on our services or on your home computer's hard drive. And when you take, you know, all of this language together, what a typical reasonable reader would come away with is the idea that Dropbox in the private course of business may have a limited right to access this data in the same way that the telephone company in Katz had a limited right to monitor phone calls when it was acting in a private capacity. But what this does not establish is the right for, or Mr. Blocker's consent, that Dropbox is going to act as an undisclosed government agent and search these files for law enforcement purposes. And that's the holding of Warshak, that's the holding of Maher. To have consent for the government-directed search, what Warshak says, and we agree with this, is you would need much more explicit language saying that the company was going to audit, review, automatically collect language far more similar to what this court was addressing in ad consent, to show that there's really no residual expectation of privacy here. That's what you would need to provide consent for the government-directed search. Counsel, I was interested in the Dropbox declaration because the district court focused on consent. But I question, based on this declaration, which I think is unrebutted, that Dropbox, they're searching for child porn, scanning files pre-existed their licensing agreement with this particular software, that they had their own business interest for conducting these searches. How do you respond? So Your Honor, I think the declaration says that Dropbox has a pre-existing business interest. I don't know that it establishes that they were doing this kind of scanning prior to their relationship with NCMEC. And the particular search that occurred here occurred using the scanning software. Is that undisputed? I'm sorry. That it was the photo DNA software, that scanning that led to the flagging? So Your Honor, that's a fact finding made by the district court on page 5 of the appendix. I don't think the government challenges that or says that's a clearly erroneous factual finding. And they certainly didn't make that position below. So I think at this point in litigation, it's undisputed that photo DNA was used to search Mr. Blocker's account. To turn to this question of independent government interest. That's not enough to say that this is a private search as opposed to a Fourth Amendment search. And the case I would point you to on that is the Supreme Court's decision in Skinner. And in Skinner, the Supreme Court held that permissive regulations that encourage but did not require railroads to drug test employees still created state action for Fourth Amendment purposes. And that was so even though there was clearly a private interest on the railroad's part in making sure derailments didn't happen and making sure that employees didn't use drugs. The question instead is, was there a government thumb on the scale encouraging and involving themselves in the search? And that's exactly what we have here. So we do think this is a Fourth Amendment government-directed search. And we don't think the language in the Terms of Service Agreement is sufficient to provide consent for that kind of search. With that, I'll reserve the remainder of my time for Bob. Certainly, Mr. Hardwick. Ms. Moore. Good morning, and may it please the Court. My name is Alex Morgan, and I represent the United States. As the district court concluded here, defendant consented to drop boxes search through its terms of service. In Atkinson, this court held that a user could consent in advance to the sharing of their services. This is a straightforward application of Adkinson. We seem to suggest that consent is somewhat dispositive of the case. And so how do we respond to our counsel on the other side when a reasonable person reading this contract he directed us to page 40, 42, and 48 of the appendix would not understand or appreciate consent was being given? I don't read the terms of services in that same way. So if you look at Dropbox's acceptable use policy, it prohibited users in no uncertain terms from using the service to publish or share unlawfully pornographic materials. It told users that it could review their content for compliance with the terms. And I understand that that defense counsel makes the point that it didn't say that it could review, but it did say that it had the right to do that and that it could also disclose the information to third parties. And I think those terms taken together as the district court found a reasonable person would understand to establish defendant's consent to Dropbox search of his files. I'll also point out that in Atkinson, for example, T-Mobile's terms said that it could disclose its user's information, so it also uses conditional language. But what is important is that if you look at the terms as a whole, I think a reasonable person would understand them in this particular instance to establish that consent. In response to defendant's point that Atkinson is distinguishable because what was disclosed there were T-Mobile's own business records, I don't think that that's a point that can be used to distinguish Atkinson. Atkinson turned on the consent and the notice given to the user of the risk that he ran in agreeing to that, and the search here, as in the search in Atkinson, was within that scope of consent. I want to turn to Dropbox's actions that were conducted as a private party. It was acting to enforce its own rules to prevent child sexual abuse material from being stored and distributed on its platform, and it scanned its platforms to advance its own business interests. As Your Honor, Judge Maldonado pointed out, there was record evidence indicating that Dropbox had this preexisting interest to get rid of this material from its platforms, and that is precisely why it entered into these agreements to get the technology in order to continue to further that interest. This court in Beveris, as well as courts throughout the country, have concluded that service providers that encounter and report child pornography are not acting as government agents. Dropbox's contracts with the National Center do not change this analysis. Dropbox had no statutory obligation to search for child pornography. It instead chose to enter into contracts to further its own preexisting business interests of removing this material from the platform. And the contracts did not allow the National Center control over the scanning efforts that Dropbox took. Instead the contracts set constraints on how the technology and the National Center's data were to be used. Moreover, Dropbox and the National Center never collaborated with respects to searching the defendant's files. Law enforcement became involved after Dropbox had completed its private search, found the files, and reported it to the National Center, which is just what happened in Beveris where this court held that the service provider there did not act as a government entity in finding and reporting child pornography. If there are no further questions, the government requests that this court affirm the defendant's convictions and sentence. Thank you, Ms. Morgan. Anything further, Mr. Hardwick? So I want to stress that the reason there's not consent here is not the difference between Dropbox saying it would search and saying it could search. It's the difference between what Dropbox was entitled to do in its private capacity for its own business interests and what it was permitted to do on behalf of the government. And that's the distinction that Warshak and Maher draw. That's the distinction drawn in the Law Review article by Oren Kerr. And that's what a reasonable reader would not take away from the terms of service and privacy policy at issue in this case. That Dropbox had agreed to act as an undisclosed agent of the government and was using government resources to engage in law enforcement searches. That distinction is crucial to there being any Fourth Amendment protection for online services like email or file hosting sites like Dropbox. To turn to Adkinson and the language at Adkinson that makes this case distinct from Adkinson. In Adkinson, T-Mobile owned these records. They automatically collected them and used them. And there was no suggestion in that terms of service that it was holding them as an intermediary but that they belonged to the user themselves. And that's the same distinction that underlies the distinction between the telephone company's right of access and the government's right of access in CATS that explains why hotel employees can go into your hotel in ways that federal agents cannot and why the fact that they can turn over the room doesn't allow them to engage in undisclosed agreements to search for contraband in your room. That's the fundamental distinction there. As to the question of was Dropbox acting in a private capacity or as a government agent, while there may not have been a statutory obligation for it to do these searches, it undertook a contractual obligation. That's in paragraph 5 of the Memorandum of Understanding where Dropbox says as one of its responsibilities it will perform these searches. And when you look to- Were they taking that stance from a government contract with NCMEC or were they taking it as a business? So Your Honor, it's part of their contract with NCMEC. NCMEC says we'll provide this technology and in exchange, Dropbox says we'll undertake this obligation to search. And that's very different from any of the prior cases this Court has considered like Beaveris about state action. This is an exchange where the government's offering resources and in exchange the company's giving up control over whether it does these searches, how it does these searches, and why it does these searches. That has- Isn't it more a little hands-off though because it's saying, yes, you'll use the photo-DNA signatures and you'll report your progress in utilizing. So the government isn't saying you must do this weekly. They're not micromanaging Dropbox's use of this technology. Your Honor, I think I disagree with that. And in particular, both the sublicense agreement and the Memorandum of Understanding require Dropbox to comply with the implementation documentation provided by NCMEC. And so there is whether NCMEC fully exercised that right of control by micromanaging. They certainly reserved the right to micromanage and Dropbox had to report and had to use this in the way that NCMEC said they had to use it. Thank you, counsel. The case is taken under advisement.